**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 14, 2019

By ECF and Electronic Mail
Magistrate Judge Robert M. Levy
United States District Court
Eastern District of New york
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:    United States v. Bernard Augustine, 18-cr-393 (SJ / RML)

Dear Judge Levy,

Please accept this letter in lieu of a formal motion for pretrial release at Mr. Augustine's upcoming appearance on November 15, 2019.

We previously appeared before Your Honor on October 30, 2018, for an initial bail application in this case. The Court heard argument on risk of flight and danger, but the Court did not make findings as to whether there is a condition or combination of conditions that can reasonably assure Mr. Augustine's appearance and the safety of the community. *See* Exhibit A (Transcript of October 30, 2018 detention hearing, enclosed under separate cover). We respectfully request that the Court address that question tomorrow. We also request the opportunity to supplement Mr. Augustine's bail request in light of the pretrial motions recently filed by the defense and the Rule 16 discovery disclosed by the government in the intervening period.

**A. Proposed Bond**

Mr. Augustine requests that he be released on a substantial collateral bond secured by real property, and co-signed by three financially responsible sureties, his mother and two sisters. *See* Exhibit B (Surety Table, enclosed under separate cover). This is a more substantial collateral package than was previously offered. At the prior hearing, we had offered two sureties, Mr. Augustine's mother and one sister. Both of those sureties now earn higher incomes than they did a year ago, and we are also proposing an additional surety, Mr. Augustine's second sister, who is also now working. These three co-signers have sufficient moral suasion to assure Mr. Augustine's compliance with the terms of the bond—they are his closest family, and have been a

1

strong support network for him during his almost four years of incarceration. They were the people he wrote to from Tunisian prison (he was not allowed phone calls for two years), and they are the people he now regularly speaks to on the phone. Mr. Augustine can assure the Court that he would never do anything that could jeopardize their livelihoods.

We request that Mr. Augustine be released on stringent conditions, to include the standard conditions as well as the following additional conditions:

1. Report to Pretrial Services as directed;
2. Maintain a residence at his mother's address;
3. Submit to home detention with GPS location monitoring. The defendant must stay at his residence at all times, except, as approved by Pretrial Services Office, for education, religious services, medical appointments, attorney meetings, court appearances, or other pre-approved activities;
4. The defendant may only use a computer approved by Pretrial Services, which is subject to government monitoring and search, and may not use any other computer or any mobile communication device without prior notification to and consent of Pretrial Services. The defendant's computer use is limited to educational, legal, and vocational research, and Pretrial Services may inspect any computer or devices with Internet access belonging to the defendant and install computer monitoring software as deemed appropriate. The defendant's written online communications, if any, shall be conducted in the English language;
5. The defendant may use a telephone only to contact his counsel, treatment providers, sureties, Pretrial Services, or to call for assistance in the event of a medical or other grave emergency, and consents to pretrial monitoring of his telephone communications except those with counsel;
6. The defendant may not knowingly have contact with individuals or organizations that are affiliated with foreign terrorist organizations, or individuals or groups that promote violence for the purpose of effecting political change;
7. The defendant may not possess a firearm or any other instrument or materials designed to be used as a lethal weapon;
8. The defendant shall not attempt to acquire a passport or any other travel document;
9. The defendant will be subject to random home and community contacts by Pretrial Services; and,
10. The defendant must undergo mental health evaluation and/or treatment as directed by Pretrial Services.

These conditions are sufficient to reasonably assure the safety of the community and Mr. Augustine's appearance in Court.

B. **The Bail Reform Act**

In evaluating which if any conditions should be imposed that are the least restrictive, the Court looks to the following factors:

(1) the nature and circumstances of the crime charged;

2

    (2) the weight of the evidence against the defendant;

    (3) the history and characteristics of the person, including--

        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g).

**1. The Nature And Circumstances Of The Crime Charged**

The Court now has the benefit of fully submitted briefing from the parties in connection with Mr. Augustine's motion to dismiss the indictment, motion to suppress evidence, and motion for a bill of particulars. Mr. Augustine is prepared to discuss the nature of the offense in more detail at tomorrow's appearance, but we note that while, of course, all material support for an FTO charges are serious, even if the government could meet its burden in this case—and we submit that it cannot—the alleged conduct is far more minimal compared to the aggravating factors in other similar cases. First, there is no allegation here of violence or intended violence. Second, Mr. Augustine is not charged with any completed substantive acts of material support. And third, Mr. Augustine had no contact with any members or affiliates of ISIS. The alleged conduct in this case is significantly attenuated from any real harm.

The circumstances of the crime charged will be discussed further below, and at tomorrow's appearance.

**2. The Weight Of The Evidence Against The Defendant**

More than a year after Mr. Augustine's initial bail application, the factual record in this case is now far more developed. The government has made additional discovery productions, and the parties have submitted a full proffer of relevant facts in connection with the motions in this case. Even when viewed in the light most favorable to the government, no reasonable jury could find Mr. Augustine guilty of the sole count of the indictment. Quite simply, it is one of the weakest Section 2339B cases the government has ever prosecuted, nationwide.

In *United States v. Adam Shafi*, 15-cr-582 (WHO) (N.D.Cal. Oct. 5, 2018), Dkt. 312, a Section 2339B case with allegations of two attempts at traveling to join an FTO, significant contacts with the FTO, as well as radicalizing and recruiting a number of other individuals, the presiding judge ordered the defendant released in part based on the weakness of the trial evidence. Although Mr. Shafi was indicted and tried (leading to a hung jury) on material support, the government ultimately offered a plea to a lesser charge. The facts in *Shafi*, like in every other case we could identify that's been brought under Section 2339B, were worse than here.

Mr. Augustine has also made a strong prima facie case for dismissal of the indictment, on a number of grounds including the weakness of the evidence. One ground for dismissal in particular that the Court should revisit tomorrow is the issue of double jeopardy. At the Oct 30, 2018 bail hearing, Your Honor inquired as to whether Mr. Augustine's conviction and sentence for the same conduct in Tunisia creates a bar against the instant prosecution. The government responded that they were not aware of any bar. Exhibit A, 26:11-18. We now know, based on additional discovery productions and our review of those productions as well as the applicable case law, that there is such a bar to this prosecution. Mr. Augustine is likely to prevail on the merits, and should be able to await resolution of the motions at home, under the stringent conditions described above.

The weakness of the evidence, and the strength of Mr. Augustine's pretrial motions, should be viewed by the Court as dispositive in ameliorating any risk of flight or danger. Mr. Augustine has every incentive to face these charges in court, without incurring additional charges while on bail.

### 3. The History And Characteristics Of The Person

Mr. Augustine's history and characteristics are only positive. He has exceedingly close and strong family ties, had lived in his community for over a decade, and had no past contact with any criminal justice system.

When he was first arrested he was tortured and then was placed in Tunisian custody where he was unable to talk to his mother for a full two years. Instead, he wrote sweet letters home, talking about how much he missed his mother's cooking and longed to eat American staple foods, like pizza, and how he couldn't wait to come home to California and find a job. *See* Exhibit A at 6:18-7:19. In the past two years at MDC, he has been reading voraciously, including the New York Times, the Economist, and numerous fiction and non-fiction books on a variety of topics. He is at an age where he longs to learn–which is what he should be doing, in college. In these four years of imprisonment, he has not gotten in trouble, but instead tends to put his fellow incarcerated-people and the guards at ease.

### 4. The Nature And Seriousness Of The Danger To The Community Or To An Individual That Would Be Posed By Release

Under the Bail Reform Act, the conditions of release do not need to guarantee, but rather "reasonably assure" the safety of the community. *See United States v. Tomero*, 169 F. App'x 639, 641 (2d Cir. 2006) (reiterating that 18 U.S.C. § 3142(e) requires "a reasonable assurance rather than a guarantee" of community safety); *see also United States v. Schwamborn*, No. 06-CR-0328, 2007 WL 9653331, at *8 (E.D.N.Y. June 29, 2007) ("[T]he Bail Reform Act requires a reasonable assurance, not a guarantee, of safety.").

To detain a defendant based on danger to the community, the government's proof must be clear and convincing. 18 U.S.C. § 3142(f)(2)(B). Even where there is a presumption of detention, "the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community." *See United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even if the government satisfies that burden, the court must still determine whether there are conditions that will reasonably assure the safety of the community if the defendant is released. *See United States v. Khashoggi,* 717 F. Supp. 1048, 1049 (S.D.N.Y. 1989); *see also United States v. Paulino*, 335 F. Supp. 3d 600, 603 (S.D.N.Y. 2018) ("[T]he government must prove . . . not only a defendant's potential danger to the community, but also that no conditions can reasonably assure the safety of any other person and the community.").

In deciding whether to order Mr. Augustine's continued release, this Court "should bear in mind that it is only a 'limited group of offenders' who should be denied bail." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1984)). "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This is true even for the most serious and violent offenses. *United States v. Madoff*, 586 F. Supp. 2d 240, 247–48 n.8 (S.D.N.Y. 2009) (quoting *Khashoggi*, 717 F. Supp. at 1049). "Doubts whether [bail] should be granted or denied should always be resolved in favor of the defendant." *Herzog v. United States*, 75 S. Ct. 349, 351 (1955); *accord United States v. Williams*, No. 17-CR-78-FPG, 2018 WL 3633296, at *2 (W.D.N.Y. July 31, 2018).

Mr. Augustine has no history of violent conduct at all. He has no prior contact with the criminal justice system. He has had no issues in Tunisian custody or at MDC. Ultimately, the government's claim that Mr. Augustine must be detained is based exclusively on the charges against him. Accepting the government's claim that the seriousness of the accusations in the indictment are alone sufficient to warrant Mr. Augustine's detention would improperly require the detention of any defendant accused under Section 2339B. *Cf. United States v. Cirillo*, 149 F. App'x 40, 43 (2d Cir. 2005) (noting that even for organized crime leaders, there is "no per se rule requiring . . . detention"). This is plainly at odds with the Bail Reform Act and current practice showing that even defendants accused of violent assaults and murder can be released on bail. *See, e.g.*, *Paulino*, 335 F. Supp. 3d 600 (ordering release of alleged gang member with criminal history accused of a participating in a violent assault where there was video of him assaulting the victim); *United States v. Messina*, 11-CR-031 (E.D.N.Y.) (KAM), Minute Entry Mar. 3, 2011 (affirming magistrate judge's order releasing alleged organized crime associate

5

accused of murder, extortion, and racketeering); *United States v. Polito*, 02-CR-047 (E.D.N.Y.) (DGT), Dkt. 23 (ordering release of alleged organized crime associate charged with three counts of murder in aid of racketeering and facing the death penalty).

In sum, the government has not, and cannot, prove by clear and convincing evidence that Mr. Augustine would pose a danger to the community if released on bail. Aside from being charged with a crime, everything else about Mr. Augustine—his background, lack of criminal history, and conduct during his four years incarcerated—shows he does not present a danger to the community and is capable of adhering to the proposed conditions on a substantial bond co-signed by his family and secured by property.

**Mr. Augustine is also not a risk of flight.**

In finding a serious risk of flight, courts consider skill in avoiding surveillance, prior flight from law enforcement, and use of aliases. *See, e.g., United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000) (access to false documents factor in finding risk of flight); *United States v. Gonzales Claudio*, 806 F.2d 334, 338 (2d Cir. 1986) ("made travel arrangements for a portion of the journey under a false name"); *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) (per curiam). These factors are not present here: Mr. Augustine has no skills in avoiding surveillance, no use of false names or encrypted messaging apps, no false travel documents, no history of bench warrants, and no valid passport. Nothing in the discovery suggests any desire or willingness to evade authorities, and despite knowing that he'd be prosecuted in the United States, he waited for the FBI to pick him up in an unsecured waiting area in Tunis. Mr. Augustine also has strong ties to California, to his family, and to his community.

Additionally, Mr. Augustine has every desire and incentive to continue to be actively engaged with his case. He has just filed significant pretrial motions and looks forward to his case progressing. In any event, the proposed bond conditions which include GPS monitoring, internet monitoring, and phone monitoring would more than adequately address any lingering concern about flight.

**C. Even If The Court Finds That Mr. Augustine Should Not Be Released Under The Bail Reform Act, He Should Be Released Because His Continued Detention Is Unconstitutional**

When detention becomes "excessively prolonged," it may no longer be reasonable in relation to the regulatory goals of detention, in which event a violation of due process occurs. *United States v. Salerno*, 481 U.S. 739, 747 n.4 (1987). To determine whether the length of pretrial detention has become constitutionally excessive, courts must weigh three factors: "(i) the length of detention; (ii) the extent of the prosecution's responsibility for the delay of the trial; and (iii) the strength of the evidence upon which the detention was based. *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993).

6

(i) <u>the length of detention</u>: Mr. Augustine has been detained now for more than 45 months, a period of detention that exceeds the length of time at issue in the majority of pretrial due process detention challenges.[1] When we last appeared before Your Honor, on October 30, 2018, the Court inquired as to whether a trial date had been set. Exhibit A at 34:21. A trial date still has not been set, and although we believe Mr. Augustine should succeed on the merits of his motion to dismiss the indictment, resolution of the motion is likely months away. Even if Mr. Augustine is convicted, he has already overserved what would be an appropriate and just sentence in this case.

(ii) <u>the extent of the prosecution's responsibility for the delay of the trial</u>: The government is responsible at least for Mr. Augustine's two years spent in Tunisian detention. The Tunisians made him available to the FBI for prosecution the week he was arrested. Instead, it was more than two years before he was transferred from Tunisian custody to custody at the MDC.

(iii) <u>the strength of the evidence upon which the detention was based</u>: The evidence of the charged crime is weak, as is the evidence of any real risk of flight or danger.

Mr. Augustine should be released.

/s/
Samuel Jacobson
Allegra Glashausser
Assistant Federal Defenders
Federal Defenders of New York

---

[1] *See United States v. Gallo*, 653 F. Supp. 320, 344 (E.D.N.Y. 1986) (JBW) (8 months detention on RICO charges with allegations of threats to government witnesses does offend due process, and "any pretrial detention of more than 90 days exceeds what Congress contemplated, and a pretrial detention of more than six months should flash a warning that a violation of due process has probably occurred."); *United States v. Gonzales Claudio*, 806 F.2d 334, 341 (2d Cir. 1986) ("Detention that has lasted for fourteen months and, without speculation, is scheduled to last considerably longer, points strongly to a denial of due process."); *United States v. Zannino*, 798 F.2d 544, 548 (1st Cir.1986) ("In many, perhaps most cases, sixteen months would be found to exceed the due process limitation on pretrial confinement."); *but see Millan*, 4 F.3d at 1043 (24 months, with an anticipated total detention of 30 or 31 months until the end of the retrial, for defendant with history of bench warrants facing 20-year to life sentence did not violate due process); *United States v. El–Gabrowny,* 35 F.3d 63 (2d Cir. 1994) (27 month detention, though "unquestionably a long duration[,]" did not violate due process); *United States v. El–Hage,* 213 F.3d 74, 78, 81 (2d Cir. 2000) (33 month pretrial detention was regulatory and not violative of due process); *United States v. Orena,* 986 F.2d 628, 630 (2d Cir. 1993) (9 month detention did not "exceed [ ] allowable limits"); *United States v. Berrios–Berrios,* 791 F.2d 246, 252 (2d Cir.1986) (holding that "pretrial detention for eight months has not been unconstitutional"); *United States v. Dupree*, 833 F. Supp. 2d 241, 251–52 (E.D.N.Y. 2011) (9 month detention did not violate due process).

7

                                            (718) 407-7429

cc:    AUSA Craig Heeren (via ECF)
        AUSA Michael Keilty (via ECF)