

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:CRH/MTK   *271 Cadman Plaza East*
F#2016R00308   *Brooklyn, New York 11201*

November 19, 2019

By Hand Delivery and ECF

The Honorable Robert M. Levy
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Bernard Raymond Augustine
            Docket No. 18-CR-393 (SJ) (RML)

Dear Judge Levy:

      The government writes in opposition to the defendant's renewed motion for pretrial release. See Motion for Bond, Docket Entry No. 42 (the "Motion").[1] The defendant is an avowed supporter of ISIS who traveled to North Africa in an attempt to join ISIS in Libya, who researched firearms and accessed a gun retail website before traveling to join ISIS, and who – even while in custody – has indicated his intent to blow up a hotel in Manhattan. He has previously been ordered detained on two prior occasions. Nothing about his latest effort to secure his pretrial release mitigates the danger that he poses to the community or safeguards against his risk of flight. The Court should deny the defendant's request for release, find that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community, and enter a permanent order of detention pending trial.

---

[1] The government was made aware of this bail application at 8:45 p.m. the night before the scheduled status conference on November 15, 2019. At that time, defense counsel emailed the government an 8-page submission with two exhibits attached. As the defendant's proposed sureties – who all reside in California – were present in the courtroom for the status conference, it appears that defense counsel had been planning to make this motion for some time. The government objects to this ambush-style of motion practice.

I. <u>Overview</u>

The defendant is charged with attempting to provide material support to a foreign terrorist organization after traveling to North Africa to join the Islamic State of Iraq and al-Sham ("ISIS") in Libya. The defendant's goal was clear and explicit: to provide himself as personnel for ISIS' terrorist cause. As the defendant himself stated, he wanted to join ISIS in order to "seek the ultimate justice," to fight for a caliphate that required the "spilling of blood," and to ultimately die a martyr. Before traveling to join ISIS, the defendant watched propaganda videos, including a video showing the beheading of 20 people in Libya by ISIS members and videos by individuals who instructed ISIS supporters to conduct acts of violence in United States. The defendant also conducted searches that included "how to safely join isis [sic]," searches for firearms, and visited a gun retail website only a few months before he traveled. The defendant was arrested after traveling to Tunisia, en route to Libya to join ISIS.

The evidence that the defendant attempted to support ISIS is substantial, and is consistent with a desire to commit acts of deadly violence both abroad and in the United States. The defendant's time in custody in Tunisia (where he was convicted of terrorism crimes) or awaiting trial in the United States has not changed him. To the contrary, while detained at the Metropolitan Detention Center (the "MDC"), the defendant discussed plans to conduct a bombing of a hotel in New York City.

Given this record, the defendant was appropriately ordered detained pending trial by Magistrate Judge Scanlon when he was first arraigned in this case. The defendant moved for reconsideration of this order in October 2018, and this Court properly denied the motion and continued his detention. Nothing of substance has changed since the defendant's detention first began, nor when it was reconsidered and continued. The defendant remains both a flight risk and a significant danger to the community, and the defendant has failed to overcome the presumption of detention that is required in the case of a federal crime of terrorism. <u>See</u> 18 U.S.C. § 3142(e)(3)(C) ("it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" where the defendant is charged with a federal crime of terrorism).

Given the defendant's desire to join ISIS, his interest in martyrdom, and his pursuit of firearms, the evidence indicates that the defendant's release is not only unwarranted, it could be catastrophic. For these reasons, the government respectfully requests that the Court deny the defendant's motion. Moreover, based on this same record, the government respectfully cross-moves the Court to find that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community and enter a permanent order of detention pending trial.

2

II.     Procedural and Factual Background

   A.     The Islamic State of Iraq and Al-Sham (ISIS)

ISIS is a designated foreign terrorist organization that, since 2013, has claimed credit for numerous terrorist activities as part of ISIS's broader goal of forming an Islamic state or "caliphate" in Iraq, Syria, and beyond. [2] ISIS supporters have claimed responsibility for several attacks in the United States, including: the May 2015 shooting in Garland, Texas, at an exhibition featuring cartoons of the Prophet Mohammed; the December 2015 shooting in San Bernardino, California, at the Inland Regional Center; and the June 2016 shooting in Orlando, Florida, at the Pulse nightclub.

In 2015, members of ISIS entered and took control of several cities in Libya. Between early 2015 and late 2016, including the period when the defendant traveled, Libya was a base of operations for ISIS' terrorist activities, and was a place where numerous foreign fighters traveled with the goal of joining ISIS.

   B.     The Defendant's Support for and Attempt to Join ISIS

The defendant, a resident of California, is a radicalized supporter of ISIS who attempted to travel to Libya to join the terrorist organization and fight in support of its violent ideology.

Prior to traveling, the defendant engaged in conduct that reflected his support for ISIS. The defendant repeatedly extolled the supposed virtues of ISIS to his mother, sending her ISIS propaganda videos, including one that had a child holding a machine gun. The defendant conducted internet searches related to ISIS and terrorism. For example, he entered the search "how to safely join isis" and clicked on a page about the recruitment of westerners by ISIS. He searched for information about "Jihadi John," a western-born ISIS member responsible for the beheadings of numerous ISIS captives. He also searched for information about ISIS leaders, like former ISIS leader Abu Bakr al-Baghdadi, and viewed videos by ISIS supporters and other individuals, like Anwar al-Awlaki, who advocated for jihadists who could not travel abroad to instead commit acts of terror in their home countries. Notably, given the defendant's review of videos by people who encouraged terror attacks in the United States, the defendant also searched for firearms, visited a gun retail website, and searched for various types of gun ranges to practice shooting. In interviews following the

---

[2] A more detailed factual and procedural summary of this case can be found in the government's omnibus opposition to the defendant's pending motions, as well as in the government's original memorandum seeking the defendant's pretrial detention. See Opp. to Def.'s Motions at 2-8 (Doc. Entry No. 37); Letter regarding detention, dated Feb. 27, 2018 (Doc. Entry No. 5).

defendant's detention in Tunisia, family members noted that the defendant had anger problems and had recommended that he see a psychiatrist.

The defendant also spent time online, writing numerous public postings in support of ISIS. He wrote, among other things that:

- "[T]he Islamic State is the true Islam";

- "[T]rue Islam" cannot be "implemented without khilafah" (another word for caliphate and a reference to ISIS) and cannot be "maintained except through the blood of the mujahedeen" (a term meaning freedom fighter and, in this context, a reference to someone who fights for ISIS);

- People who do not follow sharia law "are free to fight the Muslims and then you won't be living at all";

- There "is a war going on, between islam [sic] and the world"; and

- "Muslims who leave the west, travel in the opposite direction of [people fleeing Syria due to ISIS], answer the call for the struggle, and march until they are victorious or martyred are the true believers."

In the months prior to his departure, the defendant viewed numerous videos online that depicted ISIS leaders and fighters, including fighters engaged in acts of violence. For example, the defendant viewed a well-known, ISIS-produced video that showed, among other things, the beheading of more than 20 Ethiopian Christians who had been kidnapped in Libya—particularly notable given his decision to travel and join ISIS in the same country where this act of terror occurred. Shortly before he left to join ISIS, the defendant also told his mother that he planned to "live in khilafah" and said that he would "burn my passport" when he got there.

On February 18, 2016, the defendant traveled on a Turkish Airlines flight from San Francisco, California and arrived in Tunis, Tunisia. The defendant bought a one-way ticket just one day before he traveled.[3] The defendant told a United States Customs and Border Protection ("CBP") officer that he was planning to travel to Tunisia for vacation. Shortly after arriving in Tunisia on February 20, 2016, the defendant contacted his family and stated that he was "in north africa bodering the mediterrainarian [sic]." The defendant then told the family member he had contacted that she should not ask him any questions through the social media account, that she should not try to contact the defendant, that she should not talk to anyone who called other than their mother and younger sister, and that the

---

[3] The defendant was required to purchase a return ticket when he arrived at the airport. Records indicate that the defendant purchased the cheapest available return ticket.

4

defendant would message her after three days when he "reach[es] where [he] is supposed to go." The defendant then blocked his family members from his social media account. Additionally, on February 21, 2016, the defendant emailed his mother, and wrote, among other things, that his "purpose in life is to seek the ultimate justice," he was "on a path to fight for justice" and he chose this path because, when he died, "we will all live in paradise forever."

On February 22, 2016, the defendant was detained by Tunisian law enforcement on the suspicion that he was attempting to travel to Libya to join ISIS. The defendant was charged in a criminal case in Tunisia with (a) entering Tunisia with the intent to travel to Libya to join a terrorist organization, and (b) intent to join, participate in training, and provide support to a terrorist organization. In November 2016, the defendant was convicted of these charges and sentenced to two years' imprisonment.

On December 9, 2016, the defendant was charged in the Eastern District of New York by complaint with attempting to provide material support and resources to a foreign terrorist organization, in violation of Title 18, United States Code, Section 2339B(a)(1). Following his release from Tunisian custody in February 2018, the defendant was arrested by FBI agents in Tunisia and transported to the United States. On July 30, 2018, a grand jury sitting in the Eastern District of New York returned an indictment charging the defendant with one count of attempting to provide material support and resources to a foreign terrorist organization, in violation of the same statute.

The government recently learned that, in or about May 2019, the defendant stated, in sum and substance, that should the defendant be released from prison, he planned to once again travel overseas and join ISIS. The defendant also stated that he and "his people" wanted to bomb a hotel in Manhattan that was near the United Nations.[4]

C. The Defendant's Detention and Previously Denied Bail Application

On February 27, 2018, the defendant was ordered detained pending trial by the Honorable Vera M. Scanlon. The defendant did not propose a bail package at that time. On October 30, 2018, the defendant moved for pretrial release. Contrary to defense counsel's representations in the Motion, counsel presented the same three suretors at the last bail proceeding as are offered in the pending application. Compare Ex. A to Motion at 15:22-24 (discussing "all three of our proposed suretors, and that's his two sisters and his mother") and

---

[4] [redacted]

5

17:1-4 (detailing three suretors that "are willing to sign" at that proceeding) with Motion at 1 (incorrectly stating that "at the prior hearing, we had offered two sureties"). The Court denied the defendant's application for bail and continued his pretrial detention. The Court noted that it found that the "evidence is persuasive" as to "what he was doing when he went to Tunisia," and that there was "no evidence" that there has been some change to indicate that he was no longer a risk of flight or danger to the community. See Ex. A to Motion at 32:25-33:13. The Court found the government met its burden as to both risk of flight and danger to the community, and that "the government's arguments do show that there was…at the last time that we really understood what this defendant's intentions are, a serious risk of flight and a danger to the community at that time." Id. at 33:25-34:4.

III.     Argument

      For the reasons that follow, the government respectfully requests that the Court deny the defendant's motion for pretrial release, find that no condition or combination of conditions will reasonably assure the defendant's return to court or the safety of the community, and enter a permanent order of detention on grounds of dangerousness and risk of flight.

    A.     Legal Standard

      Federal law requires that a defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A finding of dangerousness must be supported by clear and convincing evidence; a finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

      Courts consider several factors in making the determination of whether detention is appropriate: (i) the nature and circumstances of the offense charged, including specifically whether the offense is a federal crime of terrorism; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including family ties, employment, community ties, and past conduct; and (iv) the nature and seriousness of the danger to the community or to an individual. See 18 U.S.C. § 3142(g). In making this determination, the Court is entitled to rely on evidence presented by proffer. See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

      For certain offenses, including the offense charged in this case, the law presumes that there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community. 18 U.S.C. § 3142(e)(3). This presumption may be rebutted by the defendant, provided the defendant is able to present evidence that he is

neither a danger nor a risk of flight. See United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even upon such a showing, however, the presumption in favor of detention "does not disappear entirely, but remains a factor to be considered among those weighed[,]" id., because it "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial" and "represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions." United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010) (internal quotation marks and citation omitted) (ellipsis in original).

      B.      The Defendant Is a Danger to the Community

As set forth above, the law presumes that detention is appropriate based on the offense charged. Even were this not a case with a presumption of detention, the nature and circumstances of the charged offense, the strength of the evidence, the history and characteristics of the defendant, and the seriousness of the threat presented by the defendant all support his detention as a danger to the community. This Court has once before concluded that the government met its burden to show that the defendant was a danger to the community. The defendant has neither presented new evidence that would show he is no longer a danger, nor presented a bail package that mitigates that danger; indeed, the current bail package does not materially differ from the one presented and deemed to be insufficient at the last bail proceeding.

The danger to the community presented by the defendant is evident by the fact that he attempted to join ISIS, a violent terrorist organization that has claimed responsibility for murderous attacks in the United States and around the world. The charged offense is specifically enumerated as a criterion in the detention analysis. See 18 U.S.C. § 3142(g)(1) (court shall take into account the fact that the charged offense is "a Federal crime of terrorism"). The defendant shockingly claims that his conduct is "minimal" and "attenuated from any real harm." See Mot. at 3. In essence, the defendant claims that because he was caught before he could actually commit an act of terror and kill people on behalf of ISIS, he should be set free. This is wrong. Merely because foreign law enforcement interrupted the defendant's plans before he could reach his goal of joining ISIS's terrorist cause does not render him any less a danger to the community than if he had succeeded. Given the defendant's attempted support of ISIS and his intent to become a martyr for its cause, detention is appropriate. See United States v. Farah, No. 15-MJ-312(2), 2015 WL 2353075, at *4 (D. Minn. May 15, 2015) (18 U.S.C. § 2339B case) (finding that a defendant poses a risk of harm to the community where he is "charged with attempting to join the most violent terrorist organization, ISIS"); United States v. Salkicevic, No. 15-CR-0060, 2015 WL 525556, at *2 (N.D. Ill. Feb. 10, 2015) (18 U.S.C. § 2339A case) (finding that, where a defendant is charged with conspiring to provide material support and resources to ISIS, the charged offense "could scarcely be more serious").

The weight of the evidence of the defendant's guilt is overwhelming. The evidence shows, among other things, that the defendant explicitly searched for "how to join ISIS," told people he wanted to be a martyr, watched beheading videos and other propaganda that made ISIS' pernicious conduct unambiguously clear, and proselytized about the "battle" he saw between "Islam and the world." He then bought a one-way ticket to Tunisia, which immediately borders what was at that time the ISIS stronghold of Libya, sent messages telling his family that he was going to fight for the "ultimate justice," and directed his family to avoid contacting him until he reached Libya so that he could avoid being tracked and captured. As the government explained in detail in its opposition to the defendant's motion to dismiss, the evidence in this case is amply sufficient for a jury to convict the defendant. See Opp. to Def.'s Motions at 21-24 (Doc. Entry No. 37). The defendant claims to have presented a "strong prima facie case for dismissal," but the Second Circuit has held that evidence similar to the evidence in this case is sufficient to prove attempted material support:

> "Although [the defendant] did not have an ISIS contact, nor had he sworn a formal oath of allegiance to the organization, the steps he had completed were nonetheless substantial and were 'planned to culminate' in his support of ISIS….But for the interference of [foreign] officials, there is no indication that [the defendant] would not have completed his journey…to join ISIS."

United States v. Pugh, 937 F.3d 108, 119-120 (2d Cir. 2019). So too here. Had it not been for the defendant's capture by Tunisian authorities, the defendant would have completed his journey to join ISIS in Libya, and carried out his plan to fight, participate in acts like the beheadings of Libyans he watched before he traveled, and become a martyr.

The defendant's history and characteristics also confirm that he is a danger to the community. The defendant is an unstable person, whom family members described to law enforcement as angry and requiring mental health treatment. The defendant embraced an extreme, violent ideology, and made numerous statements confirming his desire to fight and die for ISIS's jihadist cause. While the defendant's motion talks about the defendant reading the New York Times and the Economist, he spent his time before custody watching ISIS propaganda and beheading videos, including sermons by individuals who advocated for committing terrorist attacks in the United States. The defendant also searched for firearms, ways to purchase guns, and shooting ranges. In online posts, he told people that, if they did not live under sharia law, they deserved to die. Moreover, the defendant's incarceration at the MDC has not diminished his desire to join ISIS and conduct attacks on innocent civilians. While the defendant claims to put people "at ease" at the MDC (Def. Motion at 4), in reality, the defendant reiterated his desire to join ISIS in May 2019, and stated his intent to conduct an attack on a specific hotel in New York City if he were released from custody. Put simply, the defendant's history is indicative of a violent mind.

Finally, the seriousness of the threat presented by the defendant is great. As the evidence above indicates, he was committed to becoming a martyr for an extremist cause,

8

viewed acts of outrageous violence and justified ISIS's terrorism to others. He took steps like researching online gun stores and looking for ranges where he could train that are consistent with a person considering a terrorist attack. The defendant's proposed conditions of release do not sufficiently lessen the seriousness of the threat he presents to the community. ISIS supporters have repeatedly used household items and ordinary vehicles with intended deadly effect. See, e.g., United States v. Saleh, No. 15-CR-393 (E.D.N.Y.) (defendant convicted of attempting to join ISIS and attempting to kill law enforcement officer by lunging at him with a kitchen knife in Staten Island residence); United States v. Saipov, No. 17-CR-722 (S.D.N.Y.) (defendant charged with murder in aid of racketeering and other offenses for murdering eight victims by running them over with a rental truck). Nothing about the defendant's proposed conditions of release mitigates the very real threat that he will carry out attacks like the ones committed by numerous ISIS supporters or the attack that he recently stated that he would commit if released from custody.

      C.      The Defendant Presents a Flight Risk

The defendant should also remain detained because he constitutes a flight risk. The conduct at issue here involves foreign travel, and reflects a demonstrated ability by the defendant to leave the country if he desires. The defendant has shown that ties that ordinarily bind a person and make flight less likely, such as family in the United States, would not deter him from fleeing in this case. The defendant stated that he wanted to "burn his passport" once he got to the Islamic State, and that he would be happy to die a martyr for their cause rather than return to his family in the United States. Additionally, he has traveled abroad on multiple occasions, and has family connections in a foreign country. The defendant's decision to travel on a one-way ticket using a near-expired passport to join a terrorist organization clearly demonstrates that he is willing to leave the United States without any intent to return. He had no hesitation leaving his family behind when he first traveled to join ISIS, and his bail application presents no reason to think that family members serving as suretors will provide any greater security against flight if given the opportunity.

IV.Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion, find the defendant to be a danger to the community and a risk of flight for the third time, find that there is no condition or combination of conditions that will reasonably assure the appearance of the defendant and the safety of the community, and order that he be permanently detained pending trial.[5]

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:/s/ Craig R. Heeren
Craig R. Heeren
Michael T. Keilty
Assistant U.S. Attorneys
(718) 254-7000

cc:Clerk of Court (by ECF)

---

[5] If the Court determines to grant the defendant's pretrial release, the government respectfully requests that such a decision be stayed pending appeal to the district court.