Clerk's Office
Filed Date:

04/13/2021

U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA,

                       v.

BERNARD RAYMOND AUGUSTINE,

                Defendant.

-------------------------------------------------X

18 CR 393 (SJ) (RML)

ORDER ADOPTING
REPORT AND
RECOMMENDATION

A P P E A R A N C E S
UNITED STATES ATTORNEY
Mark J. Lesko
Acting United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201
By: Craig R. Heeren
Michael T. Keilty
Joshua G. Hafetz
Jonathan Edgar Algor
*Attorneys for the Government*

FEDERAL DEFENDERS OF NEW YORK, INC.
One Pierrepont Plaza – 16th Floor
Brooklyn, NY 11201
By: Samuel I. Jacobson
Allegra W. Glashausser
Sabrina P. Shroff
*Attorneys for Defendant*

1

**JOHNSON, Senior District Judge**,

Presently before the Court is a Report and Recommendation ("Report") issued by Magistrate Judge Robert M. Levy on September 8, 2020 recommending that Defendant Bernard Augustine's motion to dismiss be denied. (Dkt. No. 83) Familiarity with the Report is assumed. Defendant Bernard Augustine ("Defendant") timely objected and the government timely replied. (Dkt. Nos. 86 & 97)

A district court judge may designate a magistrate judge to hear and determine certain motions pending before the Court and to submit to the Court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within 14 days of service of the recommendation, any party may file written objections to the magistrate's report. *See id.* Upon *de novo* review of those portions of the record to which objections were made, the district court judge may affirm or reject the recommendations. *See id.* The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). "[G]eneral or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear

2

error." *Nadolecki v. New York State Dep't of Taxation & Fin.*, 2011 WL 2437481, at *1 (E.D.N.Y. June 15, 2011).

Defendant makes five specific objections to the Report. He argues that the Report errs in finding that (1) the indictment states an offense; (2) the indictment charges Defendant with providing material support to a FTO; (3) a finding on the sufficiency of the evidence would be premature; (4) § 2339B, as applied, does not violate Defendant's constitutional rights, and (5) there is no double jeopardy issue. (Dkt. No. 86). The Court reviewed defendant's five specific objections *de novo* and addresses each in turn. Based on this review, the Court adopts the Report in its entirety.

1. *The indictment states an offense.*

Defendant objects to the Report's finding that the indictment states an offense, arguing that the indictment fails to plead an essential element—that Augustine attempted to work under the direction and control of ISIS, as is required pursuant to § 2339B(h). The Court disagrees.

An "indictment... must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). And each element of the offense must be pleaded in the indictment." *See Almendez-Torres v. United States*, 523 U.S. 224, 228 (1998) (holding that each element of a charged crime must be pled in the

3

indictment).  The Government charged Augustine with attempting to provide material support to a foreign terrorist organization, the Islamic State of Iraq and al-Sham ("ISIS"), in violation of 18 U.S.C. § 2339B.  Material support is defined, *inter alia*, as "personnel (1 or more individuals who may be or include oneself." 18 U.S.C. § 2339A(b)(1).  § 2339B(h) further develops the meaning of personnel. It states that "no person may be prosecuted under this section in connection with the term 'personnel' unless that person has knowingly…attempted to provide…a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction."

At issue here is whether § 2339B(h) sets out an essential element of the offense that must be pled. Defendant argues that it does and it must, whereas the government contends that § 2339B (h) is merely definitional. No court of appeal has ruled directly on the issue.  The Supreme Court has, however, described § 2339B(h) in dicta as being definitional. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010) (pointing to § 2339B(h), *inter alia*, to explain that "Congress took care to add narrowing definitions to the material-support statute over time."). Similarly, several courts of appeal have also characterized § 2339B(h) as definitional. *See United States v. Augustin*, 661 F.3d 1105, 1121 (11th Cir. 2011) (taking for granted that

4

2339B(h) provided "the definition of personnel" while discussing whether the definition applied equally to 2339A.); *United States v. Stewart*, 590 F.3d 93, 118 n.21 (2d. Cir. 2009) (characterizing § 2339B(h) as an "amended definition" of personnel).

None of the four courts that have directly addressed this issue have found that § 2339B(h) constitutes an essential element. *See United States v. Pugh*, No. 15-CR-116 (NGG), 2015 WL 9450598 (E.D.N.Y. Dec. 21, 2015) (holding that § 2339B(h)) is a definition); *United States v. Shafi*, 252 F.Supp.3d 787, 793 (N.D. Cal. 2017) (same); *United States v. Ludke*, No. 16–CR–175, 2018 WL 2059556, at *2 (E.D. Wis. May 2, 2018) (same); *United States v. Ahmed*, No. 15 CR 49, 2015 U.S. Dist. LEXIS 171561, at *6-7 (D. Minn. Sept. 1, 2015) (holding that § 2339B(h) is an affirmative defense).

The Court finds Judge Garaufis' reasoning in *Pugh*, the only court in this district to address the issue, instructive. According to *Pugh*, two statutory features of the subsection suggested that it was a clarifying definition of personnel. *See Pugh*, 2015 WL 9450598, at *8. First, in § 2339B(h) the term personnel is in quotation marks, which indicates that the section was intended to "piggyback" on the term personnel in the definition of

5

material support or resources and clarify it.[1] Second, the language of § 2339B(h) "materially tracks the substantive offense." *Id.* The notable difference is that § 2339B(h) clarifies and limits the term personnel, which is part of the definition of the term "material support or resources" in the substantive offense. *See id.* "Put another way, subsection (h) is doing nothing more than limiting the breadth of Section 2339B(a)(1) with regard to 'personnel' offenses." *Id.* Accordingly, § 2339B(h) is not an essential element that must be pled. And the Court finds therefore that the indictment states an offense

2. *The Government can charge Defendant with providing material support to a Federal Terrorist Organization (FTO).*

Defendant disagrees with the Report's finding that he could be charged with providing material support to an FTO. Augustine argues that the Government cannot show that ISIS was in Libya at the time of Defendant's arrest as is statutorily required. *See* § 2339B (a)(1). An FTO is a formal designation applied to foreign terrorist groups by the Secretary of State based on a set of standards and procedures. *See* 8 U.S.C. § 1189. Defendant argues that the indictment must be dismissed because ISIL-

---

[1] § 2339B(g) titled "Definitions" defines the critical terms in the statute. With respect to the term material support or resources, the section reads, "the term 'material support or resources' has the same meaning given that term in section 2339A." Relevant here, § 2339A defines material support or resources as "any…personnel (1 or more individuals who may be or include oneself)."

Libya, the ISIS affiliate in Libya, was not designated an FTO until after Defendant's arrest. He points to the State Department's decision to designate ISIL-Libya as a separate regional affiliate of ISIS, rather than an ISIS alias, as evidence that there was no ISIS group in Libya before ISIL-Libya.

This argument is illogical. It ignores the fact that an FTO can operate in multiple areas and that these areas can change over time. § 1189 does not limit an FTO's designation to a single location or commit it permanently to one location. An individual could attempt to provide material support to an FTO in any of the locations in which that the group was operating, not just its named primary stronghold.

That is the case here. In the indictment the Government charges Defendant with attempting to provide personnel to ISIS, an organization which the State Department had designated an FTO long before Defendant's arrest. The Government has also proffered that it is prepared to show at trial that ISIS had a presence in Libya at the time of Defendant's arrest. It remains to be seen if the government can successfully prove this, but it has satisfactory charged defendant with attempting to provide material support to an established FTO, ISIS. As a result, this objection fails.

3. *A Finding on the sufficiency of the evidence would be premature.*

Defendant objects to the Report's recommendation that a finding on the sufficiency of the evidence is premature. Defendant argues that no substantive facts are outstanding and that no reasonable jury could find him guilty of the offense based on the current evidence.

This objection misses the point. "It is axiomatic that, in a criminal case, a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary insufficiency." *United States v. Gambino*, 809 F.Supp. 1061, 1079 (S.D.N.Y. 1992); *see also United States v. Alfonso*, 143 F.3d 772, 776-77 (2d Cir. 1998) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial to satisfy the jurisdictional element of the offense, the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."). As described above (*see supra* Part 1) and more fully in the Report (*see* Report at pp. 5-11) the indictment states a claim. The government has also not made a full proffer of the evidence. Thus, it is not the appropriate time to address the sufficiency of the evidence.

4. *As applied to the defendant, § 2339B is not unconstitutional.*

Defendant argues that as applied to him, § 2339B impermissibly restricts his rights to free speech, association and travel under the First and Fifth amendments.

Augustine first argues that as applied to him, § 2339B violates his First Amendment right to freedom of speech. Augustine claims that because there is so little non-speech evidence against him, the Government will necessarily and impermissibly rely on speech evidence—social media postings, text messages, and internet history searches—to prove its case.

It is true that "[t]he First Amendment protects against government regulation and suppression of speech on account of its content." *United States v. Caronia*, 703 F.3d 149, 162-63 (2d Cir. 2012). It "does not," however, "prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). The government clearly states that it plans to use Augustine's statements, communications, and searches to establish *mens rea*. The government writes that it will use defendant's speech to demonstrate that "(1) he knew ISIS was an FTO and involved in terrorist activity; (2) he intended to travel for the express purpose of joining ISIS rather than simply 'researching' the FTO; and (3) his intent was to provide a benefit to ISIS in the form of working on the organization's behalf upon his arrival." (Dkt. No. 37). *See*

9

*United States v. Salameh*, 152 F.3d 88, 112 (2d. Cir. 1998) (finding that defendant's terrorist related materials "were used appropriately to prove the existence of the [] conspiracy and its motive."); *United States v. Kaziu*, 559 Fed. App'x 32, 35 (2d Cir. 2014) (finding the introduction of his writings and internet search history regarding terrorism were appropriate because they were used to prove the *mens rea* elements of the charged crimes).

Defendant next argues that, as applied, § 2339B violates his First Amendment right to association because it criminalizes his attempt to join ISIS. This objection misreads the case law. In *Holder v. Humanitarian Law Project*, the Supreme Court held that § 2339B "does not penalize mere association with a foreign terrorist organization[;]" rather what it "prohibits is the act of giving material support." 561 U.S. 1, 39 (2010). The government is not prosecuting Augustine for attempted membership. Instead, it charges Augustine with attempting to provide material support to ISIS in the form of personnel.

Augustine's Fifth Amendment objection also fails. According to Defendant, as applied § 2339B violates his Fifth Amendment right to travel because it penalizes mere movement—i.e. defendant's trip to Tunisia. This argument fails for the same reason as above. Defendant is not being charged under § 2339B for simply traveling to Tunisia. At issue here is Defendant's

alleged decision to travel to Libya for the purpose of offering himself up as personnel to ISIS.

5. *Double jeopardy does not apply.*

Finally, Defendant objects to the Report's finding that double jeopardy does not apply. Augustine argues that his prior prosecution in Tunisia forecloses the possibility of prosecution in the United States. Defendant acknowledges that the dual sovereignty principle would typically bar this argument. He claims, however, that a dual sovereignty exception applies.

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy of life and limb." "The Double Jeopardy Clause is inapplicable," however, "when separate governments prosecute the same defendant, for the defendant has offended both sovereigns." *United States v. All Assets of G.P.S. Auto. Corp.*, 66 F.3d 483, 493 (2d. Cir. 1995) (quotations omitted). Courts have found an exception to the dual sovereignty principle exists when one prosecuting sovereign functions merely as a "'tool of the other'" or when one prosecution was "a sham and a cover" for the other. *United States v. Whalers Cove Drive*, 954 F.2d 29, 38 (2d. Cir. 1992) (quoting *United States v.*

*Aboumoussallem*, 726 F.2d 906, 910 (2d Cir.1984)).[2] The so-called *Barktus* exception is narrow and difficult to prove.[3] *See G.P.S. Auto. Corp.*, 66 F.3d at 495 (finding that the *Barktus* exception applies only in "extraordinary" circumstances.) One sovereign must so effectively manipulate the actions of the other that the second sovereign's officials retain little or no volition. *See Whalers Cove Drive*, 954 F.2d at 38.

This is not the case here. Defendants' arguments—that the United States initially declined to take custody of Augustine and was involved in the Tunisian court proceedings against him—do not show that Tunisia was acting as a tool for the United State or that Tunisia's prior prosecution was a sham or cover. It may demonstrate "significant cooperation" between the two parties but this is not enough to trigger the exception. *See G.P.S. Auto*, 66 F.3d at 495; *see also United States v. Garcia*, 38 Fed. Appx. 57, 58 (2d. 2002) (finding the *Barktus* exception inapplicable despite significant coordination between the United States and the Dominican Republic). Because there is no exception to the dual sovereignty principle, double jeopardy does not apply.

---

[2] The exception follows the Supreme Court's decision in *Barktus v. Illinois*, 359 U.S. 121 (1959) upholding the state's robbery prosecution against defendant who had been acquitted in federal court. The Supreme Court noted that the evidence failed to show that the state had been "merely a tool of the federal authorities" or that the state's prosecution had been a "sham and a cover." *Id.* at 124-25. Subsequently, courts have read an implicit exception into the dual sovereignty principle.

[3] Indeed, some Courts have questioned its existence.

After its *de novo* review, the Court accepts Judge Levy's well-reasoned recommendations. Accordingly, the Report is affirmed in its entirety. The motion to dismiss is DENIED.

SO ORDERED.

Dated: April 13, 2021
Brooklyn, NY

_____
signed Sterling Johnson, Jr., U.S.D.J.
Senior United States District Judge