

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:CRH/JGH/JEA
F#2016R00308

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 13, 2021

By ECF & USPS

Bernard Raymond Augustine
Register # 90712-053
80 29th Street
Brooklyn, New York 11232

   Re: United States v. Bernard Raymond Augustine
      Docket No. 18-CR-393 (SJ) (RML)

Dear Mr. Augustine:

  The government submits this letter to notify you that the government may introduce at trial evidence of: (1) certain of the defendant's statements related to the Islamic State of Iraq and al-Sham ("ISIS"), terrorism, radical jihadism and violent extremism; (2) the defendant's knowledge, research and acquisition of ISIS-related and similar propaganda materials; (3) ISIS-related propaganda videos that the defendant viewed, researched or otherwise knew about; (4) the defendant's derogatory views towards women; and (5) the defendant's arrest in Tunisia. The evidence is more particularly described and identified below and in the enclosed Attachments A through D. Admission of the evidence described herein will be the subject of some of the government's motions in limine, to be filed on July 14, 2021. The government will move to admit this evidence as direct evidence of the charged crimes or, in the alternative, as "other act" evidence pursuant to Federal Rule of Evidence 404(b) to prove the defendant's motive, intent, plan, and absence of mistake or accident.

  I. <u>The Defendant's Statements Regarding ISIS, Terrorism, Radical Jihadism, and Violent Extremism</u>

  At trial, the government intends to introduce evidence regarding the defendant's intent to provide material support to ISIS. The evidence set forth in Attachment A, which includes internet posts, social media messages, text messages, and email communications from the defendant (including but not limited to those identified in the complaint and other motion practice). Among other things, the evidence shows that the defendant discussed his support for sharia law and his hope for its spread, his belief in violent revolution and extremism, that "the Islamic State is the true Islam," that men who opposed sharia "lost their heads," and that Muslim men who fled from the violence caused by ISIS were "hypocrites" while those who traveled to ISIS to be martyred (like he tried to do) were the "true believers," and that ISIS had "conquer[ed] Iraq and

[S]yria" and would eventually conquer "the whole world, Inshaalah." In written messages to his family, the defendant explicitly discussed how he hoped to be "lucky enough to live in" the ISIS caliphate and his desire to burn his U.S. passport if he reached ISIS territory. After he traveled to Tunisia, the defendant sent a letter to his mother expressing his hope to die a martyr: writing, among other things, that his goal was to "seek the ultimate justice," that he and his family would "all live in paradise forever" when he died, that good people like himself "give their lives freely," and that his family would be his strength in the "battles to come" where he hoped to be "victorious over my and God['] s enemies."

      II.    <u>ISIS-Related Materials and Similar Propaganda from the Defendant's Computer, Email and Social Media Accounts</u>

The government also intends to introduce evidence, detailed in Attachment B, of research conducted by the defendant, and materials gathered by the defendant, that reflect substantial consumption of ISIS and other radical jihadist propaganda. The evidence includes, for example, Google searches for "how to safely join ISIS," ISIS propaganda videos such as "Flames of War," and research for leaders of ISIS such as Abu Bakr al-Baghdadi. The defendant also researched other terrorist organizations, such as al-Qaeda and al-Nusra Front, often seeking out information about how they differed from ISIS and why they were in conflict. The defendant's computer also contained images of other figures who preached radical jihadist ideology such as al-Baghdadi, as well as images of figures who had conducted acts of Islamic terrorism, such as Boston Marathon bomber Dzhokhar Tsarnaev and Chattanooga shooter Muhammad Youssef Abdulazeez.

      III.    <u>ISIS-Related Propaganda Videos That the Defendant Researched or Otherwise Knew About</u>

As the government has previously notified the defendant, the government intends to call an expert witness to testify regarding ISIS and Islamic extremists, including regarding the use of certain key concepts and terms as well on ISIS and Islamic extremist-related materials associated with the defendant. As part of this testimony, the government anticipates that the government's expert will discuss some of the evidence detailed in Attachment B, which evidence establishes the defendant's knowledge of certain ISIS-related and other radical jihadist propaganda videos. For example, the defendant's Google searches include searches for "Flames of War," an infamous ISIS propaganda video. The defendant's YouTube page included links to multiple videos of ISIS-related nasheeds, including "For the Sake of Allah," "Lana Lmorhafato Amazing Caliphate Nasheed," and "The Shari'ah Of Our Lord Is Light - Relaxing Nasheed." Finally, the defendant's computer included still images from extremist propaganda videos, such as a video of ISIS members beheading a group of Coptic Christians in Libya, which indicate his awareness of such material and of ISIS's actions. A list of the videos that may be offered as evidence are included as Attachment C.

      IV.    <u>Evidence of the Defendant's Derogatory Views Towards Women</u>

The government also intends to introduce evidence of the defendant's derogatory views towards women, reflected in statements he made and research he conducted. Specifically, the government intends to introduce evidence that the defendant became more interested in extremist forms of Islam and ISIS after he broke up with his girlfriend. The defendant wrote

statements connecting his support for ISIS and radical jihadist ideology to the inferior treatment of women, such as the view that they are "property." The defendant also expressed the belief that, with the spread of an ISIS caliphate, "women's illusion of power would vanish." The defendant also conducted searches for information about the treatment of women under ISIS, such as whether ISIS recruits were given wives, and also commented online that he would have "4 virgin wives." The government also anticipates presenting testimony from its expert on ISIS that ISIS' treatment of and views about women, including marrying women off to ISIS fighters or treating them as sex slaves, were used as as recruiting tools for foreign fighters.

A selection of these statements and research, which are directly related to the defendant's interest in ISIS and radical jihadism, are already included in Attachment A and B.

V.	Evidence of the Defendant's Arrest in Tunisia

Lastly, the government intends to admit evidence that the defendant was arrested in Tunisia. The evidence is expected to consist of (1) testimony of FBI agents who visited the defendant shortly after his arrest by Tunisian officials[1]; and (2) the defendant's own statements to FBI agents, during a flight from Tunisia to the United States, where he discussed his period of incarceration in Tunisia. Those statements are reflected here in Attachment D.

Very truly yours,

JACQUELYN M. KASULIS
Acting United States Attorney

By:	/s/ Craig R. Heeren
Craig R. Heeren
Josh Hafetz
Jonathan E. Algor
Assistant U.S. Attorneys
(718) 254-7000

cc:	Susan Kellman and Gary Villanueva, standby defense counsel (by Email and with enclosures)
Clerk of Court (by ECF without enclosures)

---

[1] The government intends only to admit the fact that the FBI agents visited the defendant while in Tunisian custody, not the statements made by the defendant. As discussed in the government's opposition to the defendant's now-withdrawn motion to suppress, the government intends only to admit the defendant's statements from that interview for impeachment purposes if the defendant testifies.